# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CENTURY INDEMNITY COMPANY, | : | |
| --- | --- | --- |
| Petitioner, | : | |
| | : | MISC. |
| v. | : | NO. 09-94 |
| | : | |
| CERTAIN UNDERWRITERS AT LLOYD'S, et al., | : | |
| | : | |
| Respondents. | : | |

Diamond, J.                                                                                           January 11, 2010

## MEMORANDUM

This is the latest in a series of reinsurance disputes between Century Indemnity Company (the reinsured) and AXA Belgium (the reinsurer). Since 1978, these companies (or their forebears and affiliates) have entered into reinsurance contracts – or "Treaties," in reinsurance jargon. In recent years, as they have mediated, arbitrated, and litigated their contractual rights and obligations, their disagreements have grown so bitter that in the instant dispute, the Parties cannot seem to agree on the time of day. That the Parties' motions, cross-motions, and cross-cross-motions generate more heat than light has made this matter especially difficult. Briefly, Century believes it is owed money by AXA, while AXA believes the opposite. Century asks me to hold AXA in contempt for refusing to pay Century the money it is owed; AXA believes I can do nothing until the Southern District of New York decides whether AXA's defense to Century's money claim is subject to arbitration. Century asks me to enjoin AXA from proceeding in New York; AXA asks me to stay the instant litigation while it proceeds in New York. Because the question of which Party owes the other money is not before me, I will deny both sides' requests

1

for injunctive relief and Century's contempt motion.

I.  Background

Petitioner Century Indemnity Company is a Pennsylvania insurance company with its principal place of business in Philadelphia. Respondent AXA Belgium is a foreign reinsurance company with its principal place of business outside the United States. *(Doc. No. 1 at 1.)* In the late 1970s, Century and AXA entered into a Reinsurance Contract. Century paid a fee to AXA to indemnify Century for obligations Century undertook through its issuance of liability policies. *(Id. at 3.)*

In 2005, a dispute arose concerning primarily the claims documentation Century was required to submit to AXA. *(Id. at 4.)* In accordance with the Contract, Century submitted the dispute to an Arbitration Panel in 2006. See *Doc. No. 1, Ex. 1 at Art. 20* ("[A]ny dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration . . . .").

During the arbitration, Century filed a "Motion to Require [AXA] to Post Letters of Credit." *(Doc. No. 22, Ex. C.)* On November 14, 2006, the Panel granted Century's Motion, ordering AXA to provide Century with "clean, unconditional, irrevocable and evergreen letters of credit" from which Century could draw funds in the event of AXA's future non-payment. *(Id,)* AXA complied, providing Century with a letter of credit worth over $1 million. *(Doc. No. 35, Ex. 4 at 3.)*

On February 16, 2007, the Panel issued its Final Award, which Century describes as a "hybrid" that "does not fit neatly into any judgment enforcement mechanism." *(Doc. No. 22 at 2.)* The Award provides, *inter alia*, that: (1) AXA must indemnify Century respecting its

settlement of litigation with Dresser Industries, Inc.; (2) "the letters of credit posted by [AXA] as ordered by this Panel shall be adjusted annually, on or before December 31 of each year"; (3) in submitting bills to AXA, Century must "supply to [AXA], before or with the billing and proof of loss, information consistent with the parties' course of dealing" to trigger AXA's payment obligations under the Contract; (4) AXA must "pay or deny a reinsurance billing within sixty (60) days of receipt [of this documentation] . . . ."; and (5) if AXA denies a billing, it must provide a "substantive reason" for the denial. *(Doc. No. 22, Ex. A.)* The Panel "retain[ed] jurisdiction for twelve (12) months to address any issues arising out of this award. . . ." *(Id. at ¶ 11.)* Significantly, Century concedes that the Award "does not contain a lump sum certain to be paid by AXA." *(Doc. No. 22 at 2.)*

On February 26, 2007, Century began submitting reinsurance billings to AXA related to the Dresser settlement and other matters. *(Doc. No. 22, Ex. F at 4.)* Century alleges that "[f]or almost three years AXA Belgium has essentially ignored" its obligations, paying none of these invoices. *(Doc. No. 22 at 1.)* Remarkably, Century did not ask the Panel to order AXA to pay the invoices or otherwise to determine the reimbursement amount AXA owed to Century. Accordingly, the Panel never addressed Century's entitlement to reimbursement with regard to the billings it submitted after the Award.

On June 11, 2009, Century filed in this Court an unopposed Petition to Confirm Arbitration Award. *(Doc. No. 1.)* On July 21, 2009, I granted the Petition and confirmed the Award. *(Doc. No. 19.)* See 9 U.S.C. § 203 (2009) ("An action or proceeding [between a United States citizen and a foreign citizen] falling under the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards] shall be deemed to arise under the laws and treaties of

the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.").

On November 12, 2009, Century filed a Motion to Hold AXA Belgium in Contempt of Court, For a Quantification of Amounts Currently Due Under the Judgment, and To Compel AXA Belgium to Respond to Discovery in Aid of Execution. *(Doc. No. 22.)* Alleging that AXA has refused to pay the billings submitted by Century after the Final Award, to respond to Century's requests for discovery in aid of execution, or to adjust annually its letter of credit, Century asks me to: (1) hold AXA in contempt of court for violating my July 21st confirming Order; (2) impose coercive sanctions against AXA; (3) quantify the amount currently due under the Award (which Century claims is $485,236.87); (4) order AXA to respond to Century's discovery requests in aid of execution within fifteen days; and (5) award Century attorneys' fees and costs. *(<u>Id.</u>; Doc. No. 42, Ex. 5.)*

On November 30, 2009, AXA filed a Cross-Motion to Stay Litigation and for Partial Satisfaction of Judgment. *(Doc. No. 35, Ex. 4.)* AXA does not dispute that since February 16, 2007, Century has billed AXA for $485,236.87. Rather, AXA argues that it is entitled under Article 18 of the Contract to offset against this amount the monies otherwise owed to AXA by Century and its affiliates. Article 18 provides:

> Each party hereto shall have, and may exercise at any time and from time to time, the right to offset any balance or balances whether on account of premiums or on account of losses or otherwise, due from such party to the other (or, if more than one, any other) party hereto under this Agreement or under any other reinsurance agreement heretofore or hereafter entered into by and between them, and may offset the same against any balance or balances *due or to become due* to the former from the latter under the same or any other reinsurance agreement between them . . . .

4

*(Doc. No. 1, Ex. 1 at Art. 18) (emphasis added).*

In 1978, AXA entered into a reinsurance agreement with ACE INA Insurance. Like Century, ACE INA is a subsidiary of ACE Limited. *(Doc. No. 35, Ex. 4 at 10.)* AXA alleges that ACE INA owes AXA nearly $2.7 million under the 1978 agreement. *(Id.)* Although ACE INA apparently disputes this amount, AXA argues that it "is entitled to offset the [$2.7 million] due or to become due . . . from ACE INA . . . against any amounts due from AXA Belgium to Century under the [Award] . . . ." *(Id. at 11.)* Century disagrees with this interpretation of Article 18, arguing that the $2.7 million AXA contends it is owed by ACE INA is not an amount "due or to become due" because it is disputed. *See* Doc. No. 42, Ex. 5 at 13 ("The alleged claim against ACE INA is . . . tenuous at best and simply cannot form the basis of an offset against the . . . due and owing judgment.").

In light of this disagreement, on November 18, 2009, AXA "served an arbitration demand upon Century seeking affirmative relief that any and all amounts due from AXA Belgium to Century under the arbitration award . . . shall be offset [by] any and all amounts due or to become due to AXA Belgium under [its 1978 agreement with ACE INA]." *(Doc. No. 35, Ex. 4 at 2.)* Century responded that AXA's demand does not set forth an arbitrable dispute. AXA subsequently "commenced an action against Century in the United States District Court, Southern District of New York . . . seeking to compel arbitration under the Federal Arbitration Act . . . with respect to its contractual offset right under [the Parties' Contract]." *(Id. at 3.)* See AXA Belgium, S.A. v. Century Indemnity Co., No. 09-9703 (S.D.N.Y.).

AXA now asks me to stay the instant proceedings pending the outcome of the New York litigation. AXA also asks me to enter partial satisfaction of judgment in AXA's favor in the

5

amount of $971,520.77, arguing that Century recently "drew down" this amount from letters of credit AXA had previously provided to Century, thus reducing the amount AXA owes under the Contract from approximately $1.4 million to the $485,236.87 Century now seeks to recover. *(Doc. No. 35, Ex. 4.)*

Finally, in response to AXA's Cross-Motion to Stay Litigation and for Partial Satisfaction of Judgment, on December 8, 2009, Century filed a Cross-Cross-Motion to Enjoin AXA Belgium From Proceeding with Its Motion to Compel Arbitration in the Southern District of New York. Century argues that this Court – rather than the Southern District – should decide the arbitrability of the offset dispute. *(Doc. No. 43.)*


II.     Century's Cross-Cross-Motion to Enjoin

Century argues that I should enjoin AXA from proceeding in the Southern District because "the 'first-filed rule' requires that this Court decide the parties' dispute, not the Southern District of New York." *(Doc. No. 42, Ex. 5 at 21.)* I do not agree.

The Third Circuit has observed that "[t]he first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank" by giving judges "the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971-72 (3d Cir. 1988). I may not apply this rule, however, "[unless] the later-filed case [is] truly duplicative of the suit before the court. . . . That is, the one must be materially on all fours with the other . . . . The issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other." Grider v. Keystone Health Plan Cent., Inc., 500

F.3d 322, 334 n.6 (3d Cir. 2007) (citations, internal quotation marks, and alterations omitted). See also U.S. v. Yuill, 2007 U.S. Dist. LEXIS 81821, at *3 (W.D. Pa. Nov. 5, 2007) ("[T]he Third Circuit . . . has interpreted the first-filed rule narrowly, holding that it only applies to truly duplicative proceedings.") (citations and internal quotation marks omitted).

Although the dispute before me certainly relates to the matter pending in New York, that dispute – and the issues it presents – is not "duplicative" of the New York litigation. See Photomedex, Inc. v. St. Paul Fire & Marine Ins. Co., 2009 U.S. Dist. LEXIS 65335, at *15 (E.D. Pa. July 28, 2009) (even where two proceedings "overlap with respect to many of the same issues," the first-filed rule does not apply unless the proceedings are "truly duplicative") (citations omitted). Moreover, as I discuss below, neither the arbitrability of AXA's offset defense nor the viability of the defense itself is properly before me. Accordingly, I cannot say that "a determination in [the instant] action [would] leave[] little or nothing to be determined in the [New York case]." Grider, 500 F.3d at 334 n.6.

Century also suggests that it is entitled to injunctive relief because AXA brought the Southern District action in bad faith, solely to delay the proceedings before me. *See Doc. No. 42, Ex. 5 at 21.* The record does not support these contentions. Given the claims Century raised at arbitration, any Article 18 defense would have been irrelevant. Not surprisingly, Century does not indicate to which arbitration claims the defense could have applied. *(Doc. No. 22 at 6.)* Similarly, the offset defense would not apply to the Final Award because, as Century concedes, the Award "does not contain a lump sum certain to be paid by AXA Belgium to Century." *(Id. at 2.)*

As I have discussed, the Panel retained jurisdiction over the Parties' dispute for twelve

7

months after issuing its February 16, 2007 Award. *See* Doc. No. 22, Ex. A at ¶ *11* ("The Panel hereby retains jurisdiction for twelve (12) months to address any issues arising out of this award . . . ."). Since the February 2007 Award, AXA has not paid any of Century's reinsurance invoices. Had Century asked the Panel to determine its entitlement to reimbursement for the billings it sent to AXA in the year following the Award, AXA would likely have been obligated to raise its offset defense or risk waiving it. *But see* Doc. No. 1, Ex. 1 at Art. 18 (offset rights may be raised "at any time and from time to time"). Century never asked the Panel to make such a determination, however.

Century also suggests that AXA should have raised the offset defense in response to Century's Motion to Confirm. *(Doc. No. 42, Ex. 5 at 8.)* Once again, because the Award did not obligate AXA to pay Century anything, AXA had no obligation to offset. Accordingly, it would have made no sense for AXA to raise Article 18 in response to Century's request that I confirm the Award.

It thus appears that AXA timely raised its offset defense once Century asked me to order AXA to pay Century some $485,000 in reinsurance claims. Accordingly, although I express no opinion as to the arbitrability of the offset defense or the viability of the defense itself, Century has not shown that AXA commenced the Southern District action simply to contrive delay or that AXA has otherwise acted in bad faith.

Nor has Century shown that AXA's decision to proceed in the Southern District (and not before me) was inappropriate. The Contract requires arbitrations to take place in that District. *See* Doc. No. 1, Ex. 1 at Art. 20 (arbitration shall take place "in New York, New York, unless otherwise agreed"). Four other arbitrations between AXA and Century are currently taking place

in that District. *(Doc. No. 49 at 3.)* AXA states that if its offset defense is deemed arbitrable, it will seek to consolidate all five arbitrations in that District. *(Id. at 12-13.)* AXA's counsel has its offices in New York. Moreover, as I explain below, the offset defense would not apply to any of the claims Century has raised before me. In these circumstances, AXA's decision to proceed in the Southern District was not inappropriate. See <u>Kelso Enters. v. M/V Diadema</u>, 2009 U.S. Dist. LEXIS 54588, at *12 (S.D.N.Y. June 23, 2009) ("When a district court has jurisdiction over an action falling under the New York Convention and the district court is also in the district and division which embraces the place designated in the agreement as the place of arbitration, it is the appropriate venue for the purposes of recognizing an award or compelling arbitration.") (internal citations and quotation marks omitted).

In sum, Century has not demonstrated that it is entitled to injunctive relief. See <u>Boyd v. Imhoff</u>, 2006 U.S. Dist. LEXIS 18147, at *3-*4 (W.D. Pa. Mar. 27, 2006)("[A]n 'injunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.'") (quoting <u>Plain Dealer Publ'g Co. v. Cleveland Typographical Union # 53</u>, 520 F.2d 1220, 1230 (6th Cir. 1975)). Accordingly, I will deny Century's request that I enjoin AXA from proceeding in the Southern District of New York.

III. <u>Century's Motion For Contempt</u>

To hold a defendant in civil contempt, the district court must conclude that: (1) a valid court order existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order. <u>Harris v. City of Philadelphia</u>, 47 F.3d 1311, 1326 (3d Cir. 1995). The party moving for contempt must prove each of these elements by clear and convincing evidence,

9

and the court must resolve ambiguities in favor of the defendant. United States ex rel. Salvino Steel & Iron Works v. Safeco Ins. Co. of Am., 181 Fed. Appx. 247, 251 (3d Cir. 2006) (citations and quotation marks omitted).

Century has not shown that AXA is in contempt of anything. As Century concedes, nothing in the Final Award or in my confirmation of the Award obligated AXA to pay a sum certain to Century. Rather, in Century's words, the Award "provide[s] a simple route to determine amounts due from time to time." *(Doc. No. 22 at 2.)*

In confirming the Final Award, I confirmed that the Panel's interpretation of the Contract was neither contrary to law nor completely irrational. See Mut. Fire, Marine & Inland Ins. Co. v. Norad Rein. Co., 868 F.2d 52, 56 (3d Cir. 1989) (the court should confirm an arbitration award that is "rationally derived either from the agreement between the parties or from the parties submissions to the arbitrators. In addition, the terms of the arbitral award will not be subject to judicial revision unless they are completely irrational.") (internal citations and quotation marks omitted). Because my July 21st Order did not require AXA to pay Century any sum of money, AXA has not disobeyed that Order by refusing to pay the $485,236.87 demanded by Century. Accordingly, AXA is not in contempt of court.

Moreover, my July 21st Order did not eliminate defenses AXA might otherwise have to Century's reinsurance claims. On the contrary, the Award allows AXA to "pay or *deny* a reinsurance billing . . . ." *(Doc. No. 22, Ex. A) (emphasis added)*. AXA now argues that it is entitled under Article 18 to offset against Century's reinsurance claims the $2.7 million AXA is purportedly owed by ACE INA. Century disagrees. The arbitrability of this dispute is now pending in the Southern District. In these circumstances, it is not an act of contempt for AXA to

deny Century's billings until the viability of the offset defense has been decided.  See Harris, 47 F.3d at 1350 ("[A] contempt decree should not be granted if there is a ground to doubt the wrongfulness of the defendant's conduct.") (citations and quotation marks omitted).

Finally, Century suggests that AXA is in contempt of my July 21st Order because AXA has not annually adjusted its letter of credit.  AXA responds that it has complied with the Award: (1) at the end of 2007, it adjusted the letter of credit to $2,688,340.00; (2) it did not adjust the letter in 2008 because Century did not request any adjustment; and (3) because AXA had until December 31, 2009 to adjust the letter, Century's contempt motion – filed on November 12, 2009 – is premature with respect to 2009.  *See Doc. No. 35, Ex. A at 3-8.*  It thus appears that AXA has not violated my July 21st Order.  If Century nonetheless believes AXA is in contempt, it may renew its motion.

IV.     Century's Motion For a Quantification of Amounts Currently Due Under the Judgment and AXA's Cross-Motion for Partial Satisfaction of Judgment

Century asks me to quantify the amount it is owed pursuant to the billings Century has submitted to AXA since February 2007.  Similarly, Century recently "drew down" $971,520.77 from letters of credit AXA had previously provided to Century "in an attempt to partially satisfy [the billings submitted to AXA] . . . ." *(Doc. No. 42, Ex. 3 at ¶ 26.)* AXA asks me to enter partial satisfaction of judgment in its favor for this amount.

Century correctly notes that under the Federal Arbitration Act I may issue clarifying orders to ensure enforcement of the Award I have confirmed.  See 9 U.S.C. § 11 (2009) (a court "may modify and correct the award, so as to effect the intent thereof and promote justice between

the parties"). Moreover, where "the arbitrator resolved all claims before him, leaving to the district court only the ministerial computation of the amount owed to [the petitioner]," a district court may quantify the amount due under the award. Flender Corp. v. Techna-Quip Co., 953 F.2d 273, 280 (7th Cir. 1992). See also Island Creek Coal Sales Co. v. City of Gainesville, 764 F.2d 437 (6th Cir. 1985) (where a party refuses to make payments required by an arbitration award, the district court has authority under § 11 to quantify the amount this party owes).

Determining the amount AXA owes to Century is hardly a "ministerial computation." Indeed, whether AXA owes *anything* to Century depends entirely on the arbitrability and validity of AXA's offset defense – issues pending in the Southern District. Century's request for "quantification" is thus really a request that I outright reject AXA's offset defense and otherwise determine that Century is entitled to $485,236.87. Such a ruling would be impermissible because it would well exceed the scope of the Final Award and because it would nullify AXA's putative contractual right to arbitration. Accordingly, I will deny Century's Motion For Quantification.

I am confused by AXA's request that I enter partial satisfaction of judgment in its favor. Century opposes the request, arguing that: (1) in seeking payment of only $485,236.87, Century has conceded that AXA has satisfied its reinsurance debt by $971,520.77; and (2) any order from me confirming that partial satisfaction would afford AXA an impermissible double benefit. *See Doc. No. 42, Ex. 5 at 21.*

In light of Century's concession, it appears that there is no dispute respecting AXA's partial satisfaction of $971,520.77 in reinsurance debt. Accordingly, I will deny without prejudice AXA's Cross-Motion for Partial Satisfaction of Judgment.

12

V. Century's Motion to Compel

Seeking discovery in aid of execution, on September 15, 2009, Century served AXA with interrogatories, document requests, and a notice of deposition for a corporate designee. See Fed. R. Civ. P. 69(a)(2) ("In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located."). AXA objected to all of these discovery requests, and Century now seeks an order compelling AXA's responses. See Doc. No. 22, Exs. K, L.

AXA suggests that Century has sought this discovery to harass and punish AXA for invoking the Article 18 defense. In support, AXA contends that there can be no legitimate need for discovery in aid of execution, given that AXA is "one of the world's largest insurance companies" and that "there is no question that AXA has the financial ability to pay [$485,236.87]." *(Doc. No. 35, Ex. 4 at 18.)* In addition, AXA suggests that there was no need to take discovery in aid of execution of a $485,236.87 debt "when [Century] was holding clean letters of credit in excess of $1 million." *(Id.)* Although Century has not adequately responded to these contentions, I need not consider them further because Century plainly has no right to take Rule 69 discovery.

By its own terms, Rule 69 applies only to the execution of a "money judgment." See Fed. R. Civ. P. 69(a)(1). See also Hamilton v. MacDonald, 503 F.2d 1138, 1148 (9th Cir. 1973) (Rule 69 applies "only when the judgment is for the payment of money"). A money judgment

> is an order entered by the court or by the clerk . . . which adjudges that the defendant shall pay a sum of money to the plaintiff. Essentially, it need consist of only two elements: (1) an identification of the parties for and against whom judgment is being

entered, and (2) a definite and certain designation of the amount which plaintiff is owed by defendant.

Penn Terra, Ltd. v. Dep't of Envtl. Res., 733 F.2d 267, 275 (3d Cir. 1984).

As I have explained (and Century concedes), the Panel did not "designate" a "definite and certain" sum that AXA owed to Century. In confirming the Final Award, I did not order AXA to pay Century any sum. There is, thus, no "money judgment" amenable to Rule 69 discovery. Accordingly, I will deny Century's Motion to Compel.

VI.  AXA's Cross-Motion to Stay

Having refused to "quantify" the Panel's Award or to allow Century to take discovery in aid of execution, I do not believe there is any litigation activity to stay. Accordingly, I will deny AXA's Cross-Motion to Stay as moot.

VII.  Conclusion

Having gone through (and paid for) an arbitration, Century now faces the prospect of another arbitration with the further possibility of consolidation with the four arbitrations pending in New York. Century could have avoided its evident frustration had it asked the Panel – either during the 2006 arbitration or in the twelve months following the Panel's Award – to determine its entitlement to those reimbursements it believed it was owed by AXA. Presumably, AXA would have been obligated to raise its offset defense, and the Panel could have then resolved the matter. Because Century chose not to proceed in this fashion, the question of how much money AXA owes Century is plainly not before me. If AXA's request for arbitration of its offset

defense and the defense itself are as frivolous as Century suggests, it can seek appropriate remedies.  See, e.g., 28 U.S.C. § 1927 (2009).  In the circumstances presented, however, I am compelled to allow the New York litigation to continue and otherwise to deny the relief Century seeks.

An appropriate Order follows.

**BY THE COURT.**

*/s/ Paul S. Diamond*

_____
**Paul S. Diamond, J.**